

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Carlos E. Fonseca Zayas<br><br>　　　Peticionario<br><br>　　　　　　v.<br><br>Brenda Rodríguez Meléndez<br><br>　　　Recurrida | Certiorari<br><br>2011 TSPR 4<br><br>180 DPR \_\_\_\_ |

Número del Caso: CC-2008-1034


Fecha: 14 de enero de 2011


Tribunal de Apelaciones:

　　　　Región Judicial de Bayamón Panel VI


Juez Ponente:
　　　　　　　Hon. Luis Rivera Román


Abogado de la Parte Peticionaria:

　　　　　　Lcda. Patriscia M. Correa Ramírez

Abogado de la Parte Recurrida:

　　　　　　Lcdo. Adeline Rodas Muriel
　　　　　　Lcdo. Lemuel Velilla Reyes



Materia: Alimentos

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos E. Fonseca Zayas
   Peticionario

v.

Brenda Rodríguez Meléndez
   Recurrida

*Certiorari*

CC-2008-1034

Opinión del Tribunal emitida por la Jueza Asociada señora Fiol Matta.

En San Juan, Puerto Rico, a 14 de enero de 2011.

En esta ocasión debemos examinar si los bienes que un alimentante adquiere por herencia deben considerarse 'ingreso' para efectos de la Ley número 5 de 30 de diciembre de 1986, según enmendada, conocida como Ley Orgánica de la Administración para el Sustento de Menores, y las Guías para Determinar y Modificar las Pensiones Alimentarias.

I.

El 23 de agosto de 2005, el peticionario Carlos Fonseca Zayas presentó una demanda solicitando que se le fijara una pensión

alimentaria a favor de su hijo menor quien vivía con su madre, la señora Brenda Rodríguez Meléndez. La señora Rodríguez Meléndez contestó la demanda y reconvino reclamando la custodia legal y la patria potestad del menor, y que se fijara una pensión mayor a la originalmente sugerida por el peticionario.[1] Para ese momento, el menor tenía unos siete meses de nacido.

El foro primario refirió el asunto del monto de la pensión a la Examinadora de Pensiones del Tribunal de Primera Instancia y, luego, acogió su recomendación. El 1 de noviembre de 2005, emitió una orden fijando la pensión alimentaria provisional en $522.05 mensuales.[2] Del informe de la Examinadora se desprende que, para ese momento, el peticionario generaba un ingreso neto de $2,009 mensual.

El 28 de febrero de 2008, la Examinadora de Pensiones sometió un Informe que recomendaba unas modificaciones a la pensión y que se diera efecto retroactivo a las nuevas cantidades propuestas. En su Informe, le imputó al peticionario un salario neto mensual de $3,000, por lo que recomendó una pensión de $723.73 retroactiva al periodo entre el 23 de agosto de 2005 y el 1 de mayo de 2006.[3] También recomendó que se aumentara la pensión a $918.13

---

[1] En su demanda, el señor Fonseca Zayas sugirió una pensión alimentaria mensual de $510.

[2] Esa cantidad se desglosó de la siguiente manera: $273.82 de pensión básica y $248.23 de suplementaria. Recomendación de la Examinadora de Pensiones, 28 de octubre de 2005.

[3] Además, el peticionario pagaba $64.71 mensuales por concepto de plan médico.

mensuales, más plan médico, retroactiva al 1 de mayo de 2006. El efecto de la retroactividad significaría una deuda acumulada de $9,535.07. En su cómputo para la segunda cantidad propuesta como pensión, la Examinadora incluyó como ingreso una herencia que recibió el peticionario cuyos activos ascendían a $170,000 en propiedades y otros bienes, y $48,500 en efectivo.[4] Acto seguido, recomendó que se le imputara al señor Fonseca Zayas un ingreso mensual total de $7,075 mensuales: $3,000 producto del ingreso de su trabajo y $4,500 por concepto de la herencia.[5]

El Tribunal de Primera Instancia acogió el Informe de la Examinadora y fijó la pensión alimentaria en $918.13 mensuales.[6] El 12 de mayo de 2008, la Examinadora sometió un Informe Enmendado y recomendó que se aumentara la pensión alimentaria a $1,956.84. El 19 de mayo de 2008, el foro de instancia acogió esa recomendación. El peticionario Fonseca Zayas solicitó reconsideración y, entre otros asuntos, alegó que los bienes adquiridos por concepto de una herencia no deben considerarse 'ingreso', y que, por esa razón, fue un error imputarle un ingreso mensual de $7,075. También alegó que sería injusto y oneroso fijarle una pensión permanente producto de un influjo de dinero que,

---

[4] En octubre de 2007, el peticionario recibió una herencia debido a la muerte de su padre.

[5] La Examinadora tomó los $48,900 en efectivo de la herencia y lo dividió entre 12 meses como si se tratase de un ingreso con una duración de un año.

[6] Sentencia del 28 de febrero de 2008. Además, el foro de instancia acogió la recomendación de la Examinadora y dio efecto retroactivo a la nueva pensión.

por su propia naturaleza, no sería recurrente. El foro de instancia declaró sin lugar la moción de reconsideración.

Oportunamente, el peticionario acudió al Tribunal de Apelaciones para solicitar que se revocara la decisión del Tribunal de Primera Instancia que le imputó un ingreso mensual de $7,075 y fijó una pensión alimentaria de $1,956.84. Su argumento principal fue que la definición de 'ingreso' contenida en la Ley número 5 de 30 de diciembre de 1986, según enmendada,[7] y en las Guías para Determinar y Modificar las Pensiones Alimentarias (en adelante "las Guías de 2006"),[8] no dispone expresamente que los bienes recibidos por herencia forman parte del cómputo de la pensión. De igual forma, reiteró su argumento de que la herencia, por su naturaleza no recurrente, no debe considerarse al fijar una pensión permanente.

El Tribunal de Apelaciones determinó que "[l]a herencia no está excluida de los recursos o medios de fortuna de un alimentante, o sea, del patrimonio total de una persona y, por lo tanto, deben [sic] ser considerados [sic] para fijar la pensión".[9] El foro intermedio razonó que los ingresos que se mencionan en la Ley número 5 y en las Guías de 2006 no son los únicos recursos económicos que tiene una persona obligada a prestar alimento, ya que

---

[7] 8 L.P.R.A. §§ 501 et seq.

[8] Reglamento número 7135 de 23 de mayo de 2006.

[9] Sentencia del Tribunal de Apelaciones del 10 de octubre de 2008, p. 8.

también se tomará en consideración el capital o patrimonio total del alimentante.[10] El tribunal apelativo resolvió que los activos de una herencia forman parte del patrimonio y, por tanto, se utilizarán para determinar la capacidad económica del alimentante para proveer alimentos. No obstante, el Tribunal de Apelaciones revocó la determinación del foro de instancia por entender que éste se equivocó al hacer el cómputo. Mientras el Tribunal de Primera Instancia tomó la porción líquida de la herencia y la dividió entre 12 meses para computar el ingreso mensual del peticionario, el tribunal apelativo determinó que lo correcto era tomar la totalidad de la herencia, incluyendo efectivo y propiedades, y dividirlo entre 36 meses. El foro apelativo razonó que, como las pensiones alimentarias se revisan cada tres (3) años,[11] de esta manera se atendía el reparo del señor Fonseca Zayas en cuanto a la naturaleza no recurrente de la herencia recibida. Es decir, considerando que la pensión tendría una duración de 36 meses y para no atribuirle un ingreso mensual artificial calculado únicamente a base de 12 meses, el Tribunal de Apelaciones optó por dividir la herencia entre el término de duración de la pensión.

Inconforme con esta determinación del Tribunal de Apelaciones, el señor Fonseca Zayas recurrió ante este Tribunal mediante recurso de *certiorari*. El 27 de enero de

---

[10] 8 L.P.R.A. § 518(b).

[11] 8 L.P.R.A. § 518(c).

2009 expedimos el auto y, en auxilio de nuestra jurisdicción, reinstalamos la pensión provisional de $918.13 originalmente impuesta por el Tribunal de Primera Instancia el 28 de febrero de 2008.[12] Ambas partes presentaron sus respectivos alegatos y, con el beneficio de sus comparecencias, pasamos a resolver.

## II.

En nuestro ordenamiento jurídico, los casos sobre alimentos de menores están revestidos del más alto interés público.[13] Hemos manifestado que la obligación alimentaria tiene su fundamento en el derecho constitucional a la vida[14] y en la solidaridad familiar.[15] Por tanto, hemos resuelto que, en nuestra jurisdicción, los menores tienen un derecho *fundamental* a recibir alimentos.[16] Al indagar en los orígenes de ese derecho fundamental, hemos señalado el derecho de toda persona "a disfrutar un nivel de vida adecuado que asegure para sí y para su familia la salud, el

---

[12] El auto de *certiorari* fue expedido el 27 de enero de 2009. El 29 de enero de 2009, mediante Resolución *nunc pro tunc*, incluimos la orden de paralización de los procedimientos y de reinstalación de la pensión provisional.

[13] Rodríguez v. Depto. Servicios Sociales, 132 D.P.R. 617, 629 (1993); López v. Rodríguez, 121 D.P.R. 23, 28 (1988).

[14] Rodríguez v. Depto. Servicios Sociales, *supra*, p. 630; *véase además* Sarah Torres Peralta, La Ley de Sustento de Menores y Derecho Alimentario en Puerto Rico, San Juan, 2006-2007, p. 1.01.

[15] Mundo v. Cervoni, 115 D.P.R. 422, 426 (1984).

[16] Rodríguez v. Depto. Servicios Sociales, *supra*, p. 633.

bienestar, y especialmente *la alimentación*, el vestido, la vivienda, la asistencia médica y los servicios sociales necesarios".[17]

La legislación puertorriqueña ha canalizado el derecho de los menores a recibir alimentos como parte del mandato constitucional del derecho fundamental a la vida. Hay varias fuentes estatutarias a las que debemos recurrir para analizar los elementos que deben tomarse en consideración al momento de fijar una pensión alimentaria a favor de un menor de edad. En primera instancia, la obligación general de proveer alimentos entre parientes está recogida en los artículos 142 a 151 del Código Civil.[18] En cuanto a hijos e hijas menores de edad sujetos a la patria potestad y custodia de sus padres, debemos recurrir al artículo 153 del Código Civil.[19] Sobre este particular, hemos resuelto que la obligación que surge del artículo 153 es parte de los deberes y obligaciones de los padres en el ejercicio de

---

[17] *Íd.*, p. 631.

[18] 32 L.P.R.A. §§ 561-570.

[19] El artículo 153 del Código Civil dispone:

El padre y la madre tienen, respecto de sus hijos no emancipados:

> (1) El deber de alimentarlos, tenerlos en su compañía, educarlos e instruirlos con arreglo a su fortuna, y representarlos en el ejercicio de todas las acciones que puedan redundar en su provecho.
> (2) La facultad de corregirlos y castigarlos moderadamente o de una manera razonable.

32 L.P.R.A. § 601.

la patria potestad, específicamente en lo que respecta a su deber de alimentar a sus hijos no emancipados.[20] Es decir, cuando se trata de un hijo mayor de edad, emancipado o que, a pesar de seguir siendo menor de edad, no está sujeto a la patria potestad y custodia de uno de sus padres, la obligación de alimentar surge del artículo 143 y no del artículo 153.[21] Incluso, se recurrirá al artículo 143 cuando el padre ejerce la patria potestad de forma compartida pero no tiene la custodia del menor.[22]

La cuantía de una pensión alimentaria al amparo del artículo 143 será proporcional a los recursos del que los da y a las necesidades del que los recibe. Por eso, la

---

[20] Martínez v. Rodríguez, 160 D.P.R. 145, nota 5 (2006).

[21] Guadalupe Viera v. Morell, 115 D.P.R. 4, 11-12 (1983). Por su parte, el artículo 143 de Código Civil dispone que:

> Están obligados recíprocamente a darse alimentos, en toda la extensión que señala el artículo 142 (sec. 561) de este título:
>
>> (1) los cónyuges.
>> (2) los ascendientes y descendientes
>> (3) el adoptante y el adoptado y sus descendientes.
>
> Los hermanos se deben recíprocamente aunque sólo sean uterinos, consanguíneos o adoptivos los auxilios necesarios para la vida, cuando por un defecto físico o moral, o por cualquier otra causa que no sea imputable al alimentista, no puede éste procurarse su subsistencia. En estos auxilios están, en su caso, comprendidos los gastos indispensables para costear la instrucción elemental y la enseñanza de una profesión, arte u oficio.

32 L.P.R.A. § 562.

[22] Chévere v. Lewis, 150 D.P.R. 525, 538-539 (2000).

pensión se reducirá o aumentará en proporción a los recursos del primero y a las necesidades del segundo.[23] Bajo este principio de proporcionalidad, se tomarán en consideración los recursos del alimentante y la posición social de la familia, así como el "estilo de vida que lleva el alimentante".[24] De esta forma, se intenta poner al menor alimentista en la misma posición que ocuparía si la unidad familiar hubiera quedado intacta.[25] Esto se puede demostrar a través de evidencia directa o circunstancial.[26]

La obligación de alimentar que surge del artículo 143 es muy general y no tiene la precisión necesaria para orientar a un foro primario en la tarea de llevar a cabo un cómputo o analizar si determinado bien debe utilizarse en dicho cálculo.[27] Consciente de ello, la Asamblea Legislativa

---

[23] Artículo 146 del Código Civil, 32 L.P.R.A. § 565.

[24] Guadalupe Viera v. Morell, *supra*, p. 14; López v. Rodríguez, *supra*, p. 33.

[25] 8 L.P.R.A. § 518(b)(3).

[26] López v. Rodríguez, *supra*, p. 33.

[27] En España, esto ha llevado a que a los tribunales de instancia se les reconozca un altísimo grado de discreción en la fijación de las pensiones alimentarias. Los tribunales de mayor jerarquía rara vez intervienen con esas determinaciones las cuales, por su propia naturaleza y por lo general del mandato del Código Civil, pueden ser significativamente diferentes entre sí. Como consecuencia, las expresiones del Tribunal Supremo de España en cuanto a esto son bastante imprecisas y generales. El artículo 143 de nuestro Código Civil es análogo a la versión española del mismo. Véanse, por ejemplo, Sentencia de 28 de junio de 1951, Repertorio de Jurisprudencia 1292, Aranzadi, p. 1888, donde, para determinar la suficiencia de una pensión, el tribunal se limitó a la figura de "proporcionalidad" entre necesidad y caudal; Sentencia de 5 de octubre de 1977, Repertorio de Jurisprudencia 3642, Aranzadi, p. 2752, donde

atendió este asunto mediante ley especial, comenzando con la aprobación de la Ley número 5 de 30 de diciembre de 1986, mejor conocida como la Ley Especial de Sustento de Menores. Esta ley ha sido enmendada en varias ocasiones, a medida que la Asamblea Legislativa ha desarrollado y profundizado en su acercamiento al asunto de las pensiones alimentarias de los menores de edad.[28] Si bien la versión actual de la Ley número 5 es bastante distinta a la original, es importante destacar que sus disposiciones acerca del cálculo de las pensiones alimentarias y sus definiciones de los conceptos relacionados con dicho cómputo no han variado significativamente. Cabe señalar que la definición de 'ingreso' ha permanecido, en lo pertinente, igual a su definición original.[29]

---

el tribunal se refiere a figuras como "fortuna" e "ingresos" sin ofrecer una definición precisa de su contenido; Sentencia de 9 de octubre de 1981, Vol. II, Repertorio de Jurisprudencia 3593, Aranzadi, p. 2922, donde se hace mención de conceptos amplios como "posibilidades económicas del obligado" y "caudal" de quien presta la pensión como parte del aumento proporcional de la pensión al incremento de ingresos del alimentante; Sentencia de 16 de julio de 2002, Vol. IV, Repertorio de Jurisprudencia 6246, p. 11100, donde se hace referencia únicamente al ejercicio de "valorar la capacidad económica del alimentante"; Sentencia de 17 de junio de 2004, Vol. III, Repertorio de Jurisprudencia 3624, p. 7478, que menciona elementos amplios como "caudal de bienes", "nivel de vida" y "modus vivendi".

[28] Se destacan la Ley número 86 de 17 de agosto de 1994, mejor conocida como la Ley Orgánica para la Administración del Sustento de Menores y la Ley número 178 de 1 de agosto de 2003, mejor conocida como la Ley para el Sustento de Menores de 2003.

[29] 8 L.P.R.A. § 501(16).

En su acepción actual, la Ley número 5 establece la política pública del Estado en cuanto a los alimentos de menores, procurando "que los padres o las personas legalmente responsables contribuyan, en la medida en que sus recursos lo permitan, a la manutención y bienestar de sus hijos o dependientes".[30] La Ley reconoció que "[e]l incumplimiento de las obligaciones morales y legales de alimentar a los hijos o dependientes es un grave problema social".[31] Al reconocer las terribles consecuencias de este incumplimiento, la Asamblea Legislativa estableció una política pública de interpretación liberal de la Ley "a favor de los mejores intereses del menor o alimentista que necesita alimentos".[32]

## III.

Como adelantáramos, la definición de "ingreso" en la Ley número 5 ha permanecido sustancialmente igual desde su aprobación en 1986. La Ley también hace referencia al concepto de "ingreso neto".[33] Este añade la posibilidad de que se tomen en consideración otros factores, como proyecciones de ingresos, gastos y estilo de vida, para determinar el ingreso a partir del cual se calculará una pensión alimentaria mensual.

---

[30] 8 L.P.R.A. § 502.

[31] Exposición de Motivos de la Ley número 86 de 17 de agosto de 1994, que enmendó la Ley número 5.

[32] Artículo 3 de la Ley número 5, 8 L.P.R.A. § 502.

[33] 8 L.P.R.A. § 501(17).

Según la Ley número 5, "ingreso":

> Comprende cualquier ganancia, beneficio, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales, incluyendo la retribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico, del gobierno de los Estados Unidos de América, el Distrito de Columbia, las Islas Vírgenes de los Estados Unidos de América, o cualquier territorio o posesión sujeta a la jurisdicción de los Estados Unidos de América según lo permitan las leyes y reglamentos federales aplicables, de cualquier estado de la Unión de los Estados Unidos de América, o de cualquier subdivisión política de los mismos, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades en cualquiera que sea la forma en que se pagaren o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea pueblo o inmueble, que surjan de la posesión o uso del interés en tal propiedad; también los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de cualquier procedencia, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica.[34]

Puede observarse que la Ley no menciona expresamente la herencia o los bienes adquiridos a través de ésta como constitutivos de 'ingreso'.[35] Este silencio es significativo ya que la adquisición de bienes por vía de una herencia es

---

[34] 8 L.P.R.A § 501(16). En su acepción no jurídica, ingreso se define como el "[c]onjunto de cantidades que alguien percibe *regularmente*. María Moliner, "Diccionario de Uso del Español", Gredos, 1991. (Énfasis suplido).

[35] "Where certain things are specified in a statute, omissions are exclussions". Humphreys v. De Ross, *infra*.

de las modalidades más comunes y conocidas de adquirir riqueza.[36] También es notable que desde que se adoptó la definición de "ingreso", hace ya 24 años, la Ley número 5 haya pasado por dos procesos exhaustivos de enmiendas en 1994 y 2003, sin cambio sustancial a esta definición y sin que se añadiera referencia alguna a los bienes adquiridos mediante herencia.

La Ley número 5 ordenó la preparación y adopción de guías para determinar y modificar las pensiones alimentarias para menores de edad.[37] De igual forma, estableció un mecanismo para el cálculo y fijación de las pensiones que toma esas guías como punto de partida. Previendo que el empleo rígido de las guías podría resultar en una situación injusta para el menor alimentista, o incluso para el propio alimentante, la Ley número 5 facultó tanto al tribunal como la Administración de ASUME para determinar la pensión, tomando en consideración los siguientes factores:

> (1) Los recursos económicos de los padres y del menor;
> (2) la salud física y emocional del menor, y sus necesidades y aptitudes educacionales o vocacionales;
> (3) el nivel de vida que hubiera disfrutado si la familia hubiera permanecido intacta;

---

[36] Son ilustrativas las palabras por el Tribunal Supremo de Pennsylvania en <u>Humphreys v. DeRoss</u>, 790 A.2d 281, 284-285 (Pa. 2002): "Considering that inheritance is one of the most common means by which wealth is transferred, it defies logic that the legislature would not have clearly provided for inheritance within the statutory definition of income if that were its intent."

[37] <u>8 L.P.R.A. § 518(a)</u>.

(4) las consecuencias contributivas para las partes, cuando ello sea práctico y pertinente, y

(5) las contribuciones no monetarias de cada parte al cuidado y bienestar del menor.

Al utilizar este método alterno, los recursos económicos del obligado a pagar la pensión alimentaria se calcularán tomando en consideración, "*además del ingreso neto ordinario, el capital o patrimonio total del alimentante*". En cuanto al padre o madre custodio, la Ley provee que "[s]e considerarán iguales criterios de la persona custodia para el cómputo proporcional a serle imputado a éste".[38]

Es decir, al evaluar si una pensión alimentaria es adecuada tras el cálculo original, el tribunal deberá determinar, primero, el ingreso neto ordinario del alimentante y, segundo, el capital o patrimonio total de éste. Es notable la diferenciación que hizo la Asamblea Legislativa entre el ingreso neto ordinario y el capital o patrimonio total del alimentante. El primero es un número determinado a partir de una entrada monetaria fija mensual al caudal del alimentante, habiéndose restado las correspondientes deducciones. El segundo -capital o patrimonio total- se refiere a bienes que, si bien no constituyen ingreso, pueden ser utilizados para ajustar la cuantía de la pensión.

---

[38] 8 L.P.R.A. § 518(b) (Énfasis suplido). *Véase además* Ixa López Paláu, La Pensión Alimentaria de los Hijos en Puerto Rico, Ed. Lego, 1998, pp. 72-73.

Los bienes que constituyen el capital o patrimonio total reciben un trato distinto al ingreso neto ordinario. En primer lugar, a estos bienes se les puede *imputar* ingreso, proceso que discutiremos a continuación. En segundo lugar, proveen un contexto que le permite al foro de instancia ejercer su discreción para tomarlos en consideración al momento de ajustar la capacidad del alimentante. De esta forma, se logra que la pensión alimentaria responda a la realidad económica del alimentante. A ello se refiere la normativa cuando hace constante referencia al "estilo de vida" del alimentante[39] y a la "posición social de la familia" como factores a ser considerados más allá del ingreso mensual devengado.[40] Finalmente, la Ley número 5 establece los mecanismos para revisar la pensión original. En primer lugar, ordena una revisión rutinaria cada tres (3) años.[41] En segundo lugar, permite la modificación de una pensión antes de los tres (3) años si "hay justa causa para así hacerlo, tal como variaciones o cambios significativos o imprevistos en los ingresos, capacidad para generar ingresos, egresos, gastos o capital del alimentante o alimentista, o en los gastos, necesidades o circunstancias del menor, o cuando exista otra evidencia de cambio sustancial en circunstancias".[42]

---

[39] López v. Rodríguez, 121 D.P.R. 23, 33 (1988).

[40] Guadalupe Viera v. Morell, *supra*, p. 14.

[41] 8 L.P.R.A. § 518(c).

[42] 8 L.P.R.A. § 518(d).

Esta norma estatutaria recoge la jurisprudencia que ya se había expresado a esos efectos.[43]

Siguiendo el mandato de la Ley número 5, se promulgaron las Guías para Determinar y Modificar las Pensiones Alimentarias en Puerto Rico.[44] Estas Guías reemplazaron a las primeras, adoptadas en 1989.[45] La definición de "ingreso" que contienen las Guías de 2006 vigentes es casi idéntica a la de la Ley número 5.[46] Igual ocurre con la definición de "ingreso neto".[47] Sin embargo, las Guías añaden dos conceptos relacionados a "ingreso" que no están incluidos en la Ley número 5: "ingreso bruto" e "ingreso imputado".

En cuanto al ingreso bruto, las Guías se refieren a la totalidad de los ingresos con los que cuentan la persona custodia y no custodia previo al descuento de las deducciones mandatorias y las aceptadas.[48] Su cómputo conlleva un "análisis de todas las posibles fuentes de ingreso con las que cuenta el alimentante".[49] En cuanto al

---

[43] *Véase* Ex Parte Negrón Rivera y Bonilla, 120 D.P.R. 61 (1987), García v. Acevedo, 78 D.P.R. 611 (1955).

[44] Reglamento número 7135 de 23 de mayo de 2006.

[45] Reglamento número 4070 de 8 de diciembre de 1989.

[46] Las diferencias mínimas entre ambas disposiciones no son pertinentes para la controversia que nos ocupa. Para la definición de 'ingreso', véase Artículo 4(15) de las Guías de 2006.

[47] Artículo 4(18) de las Guías de 2006.

[48] Artículo 4(16) de las Guías de 2006.

[49] Martínez v. Rodríguez, *supra*, p. 156.

concepto de ingreso imputado, las Guías lo definen como aquel ingreso que el juzgador atribuye a la persona custodia o no custodia cuando: (a) existan indicios o señales que demuestren que cualquiera de ellos recibe ingresos mayores a los que informa; (b) cualquiera de ellas esté desempleada o trabajando a tiempo parcial; (c) cualquiera de ellas haya reducido su capacidad productiva para eludir la responsabilidad de alimentar.[50] Esta definición de ingreso imputado surge del mandato de la Ley número 5 previamente discutido, en cuanto a los factores que el juzgador debe considerar para determinar si la pensión computada se ajusta a la verdadera situación material del alimentante.

Como puede observarse, esta disposición de las Guías de 2006 permite al juzgador adjudicar un ingreso al alimentante distinto al que éste ha informado o, incluso, *al que realmente recibe*. De esta forma, se le imputa al alimentante *lo que éste podría generar* y no necesariamente lo que realmente genera cuando esto no es consistente con su verdadera capacidad productiva. En el caso de las propiedades, por ejemplo, a éstas se les puede atribuir lo que los tratadistas llaman un "valor rental".[51]  Así, en beneficio del menor alimentista, se imputará al alimentante

---

[50] Artículo 4(17) de las Guías de 2006.

[51] Sarah Torres Peralta, *Op. Cit.*, p. 9.21.

un ingreso mayor al real, independientemente de si se generan las rentas.[52]

Al momento de computar la pensión alimentaria, el punto de partida será el ingreso bruto anual del alimentante. Para determinar el ingreso bruto anual de la persona custodia y de la no custodia, "se considerarán todas las formas de ingreso incluidas en la definición de 'ingreso' de [las Guías]".[53] Esta definición de ingreso, a su vez, nos

---

[52] La jurisprudencia española no es extraña a esta figura. Si bien el mandato del artículo 143 del Código Civil, como hemos visto, es considerablemente amplio e impreciso, es notable el reconocimiento de la jurisprudencia española de que el punto de partida para la fijación de una pensión serán los "ingresos líquidos mensuales" del alimentante y que los tribunales deben estar pendientes en casos de "desproporción" entre la capacidad de éste y las necesidades del alimentista. Sentencia de 4 de abril de 1962, Vol. I, Repertorio de Jurisprudencia 1704, Aranzadi, pp. 1137-38. Llama la atención la relación que el tribunal establece entre el concepto de ingreso y la liquidez. No obstante, la casuística española ha imputado ingresos en cuanto lo producido por los bienes heredados. En la Sentencia de 31 de diciembre de 1957, Repertorio de Jurisprudencia 3564, Aranzadi, p. 2376, el Tribunal Supremo de España corrigió a un foro de instancia por haber prescindido de algunos de los elementos exigidos por el artículo 146 al momento de fijar la cuantía de una pensión alimentaria. En particular, el Tribunal Supremo resolvió que tenía que añadirse al monto computado los productos de unos bienes. Es decir, que a unos bienes se les debía imputar la producción de ingreso. Véase, además, la Sentencia de 20 de abril de 1967, Vol. I, Repertorio de Jurisprudencia, Aranzadi, p. 1388, en cuanto a la rentabilidad de unas propiedades; y la Sentencia de 10 de julio de 1979, Repertorio de Jurisprudencia 2948, p. 2409, sobre la imputación objetiva en cuanto a las posibilidades de generar ingreso de determinada profesión u oficio.

[53] Artículo 7(A)(1), Guías de 2006. Acto seguido, las Guías exponen una lista de excepciones de entradas económicas que no se considerarán ingresos. Entre estos están los beneficios del Programa de Asistencia Temporal a Familias Necesitadas (TANF, Categoría C), y los pagos recibidos al amparo del Programa de Asistencia Nutricional (PAN). Esta lista no pretende ser taxativa. La tratadista Sarah Torres

remite a la definición de "ingreso" en la Ley número 5. Por tanto, si un determinado bien o recurso económico no cualifica como ingreso al amparo de la definición estatutaria, no será parte del cómputo de ingreso bruto e ingreso neto del cual saldrá el cálculo inicial de la pensión alimentaria. Ahora bien, el que un bien no sea considerado ingreso al amparo de la Ley número 5 no impide que se le aplique la doctrina de ingreso imputado, o que caiga dentro del concepto de "capital o patrimonio" al que hace referencia la ley, pues, como hemos visto, además del ingreso neto ordinario, *"se tomará en consideración"* el capital o patrimonio total del alimentante.[54] Es decir, en cuanto al ingreso neto ordinario, se aplicarán los cómputos matemáticos prescritos por las Guías. Igual ocurrirá con el ingreso imputado, definido como el ingreso potencial que pudo haber generado el alimentante. Sin embargo, en cuanto al capital o patrimonio total del alimentante, como éste no constituye ingreso –más allá de la aplicación de la doctrina de ingreso imputado–, solamente se *tomará en consideración* dentro de la flexibilidad que tiene el juzgador, en su sana discreción, al momento de fijar o ajustar una pensión alimentaria.

---

Peralta identifica una excepción adicional en los préstamos estudiantiles. Sarah Torres Peralta, *Op. Cit.*, pp. 4.40-4.41.

[54] 8 L.P.R.A. § 518(b)(Énfasis suplido).

El concepto de 'ingreso imputado', hemos visto, está recogido en las Guías de 2006.[55] Esta figura se utiliza cuando "las circunstancias pertinentes requieren que al ingreso real de la parte alimentante se le sumen cantidades de dinero adicionales".[56] Es decir, al ingreso real del alimentante se le imputarán cantidades adicionales aunque éstas no se estén produciendo realmente. Esto permite que al cálculo de la pensión que debe aportar un alimentante que tiene la capacidad de generar ingresos, pero no lo hace, se le añada aquello que pudo haber generado si hubiese empleado dicha capacidad. De tal forma, el ingreso neto, "sumado a los bienes de fortuna del alimentante, [constituyen] la base real que se utiliza para la fijación o modificación de la pensión alimentaria".[57]

En resumen, el punto de partida para fijar la pensión alimentaria es el ingreso bruto anual de la persona llamada a brindar alimentos. Para fijar esa cantidad, hay que referirse al concepto de 'ingreso' según definido por la Ley número 5 y las Guías de 2006. Acto seguido, se calcula el ingreso neto ordinario restando las deducciones exigidas por ley y aquellas otras que son aceptadas por el ordenamiento. Posteriormente, al ingreso neto ordinario se le *imputará* aquel ingreso que, aunque no se esté generando realmente, se *pudo* haber generado. Finalmente, el foro

---

[55] Artículo 4(17).

[56] Sarah Torres Peralta, *Op. Cit.*, p. 4.31.

[57] *Íd.*, p. 8.06.

adjudicador podrá atemperar la cuantía calculada *tomando en consideración* el capital o patrimonio total del alimentante. La pregunta que nos ocupa es en cuál de los pasos previamente mencionados, si alguno, caben aquellos bienes que son adquiridos por herencia.

IV.

En primer lugar, atendemos la interrogante de si unos bienes, sean inmuebles o muebles, adquiridos mediante una herencia constituyen, como tal, *ingreso*. Recientemente nos topamos con una interrogante similar. En Llorens Becerra v. Mora Monteserín, 2010 T.S.P.R. 72, 178 D.P.R. ___ (2010) consideramos si la capitalización producto del refinanciamiento de un préstamo con garantía hipotecaria constituía ingreso al amparo de la Ley número 5, según enmendada, y las Guías para Determinar y Modificar las Pensiones Alimentarias.[58] En aquella ocasión resolvimos que lo obtenido en virtud de un préstamo no constituía ingreso. Al referirnos al mandato de la Ley número 5 de hacer una lectura liberal de sus disposiciones manifestamos que:

> Si bien el concepto ingreso incluido en la Ley Núm. 5 es uno abarcador y que requiere una interpretación amplia en favor del derecho del menor alimentista, las inclusiones bajo dicho concepto deben, a su vez, representar ganancias, beneficios, rendimiento o frutos con los que

---

[58] En este caso, las Guías vigentes eran aquellas recogidas en el Reglamento 4070 de 8 de diciembre de 1989. Como hemos visto, en cuanto a la definición de *ingreso*, no hay diferencia entre éstas.

realmente cuente el alimentante, de forma tal que se establezca una pensión justa y razonable.[59]

Es decir, no obstante el mandato de ley de llevar a cabo una interpretación liberal de los conceptos incluidos en ella, no podemos insertar en el estatuto algo que está excluido y que no se relaciona con los elementos expresamente incluidos.[60] En Llorens Becerra v. Mora Monteserín, *supra*, resolvimos que la definición estatutaria de ingreso no incluía dinero prestado porque éste no constituye ganancia. Ahora bien, también concluimos que, aunque lo obtenido mediante préstamo no constituía ingreso, ello "no significa que el valor de las propiedades de quien está obligado a prestar alimentos o las deudas y obligaciones prestatarias en que éste haya incurrido no puedan *considerarse en forma alguna para determinar su capacidad económica*", como parte del capital o patrimonio total que debe tomarse en consideración.[61]

Al igual que en Llorens Becerra v. Mora Monteserín, *supra*, nos vemos obligados a llenar una laguna en la ley,

---

[59] Llorens Becerra v. Mora Monteserín, 2010 T.S.P.R. 72, p. 25.

[60] "[L]as palabras asociadas se explican y limitan entre sí". R. Elfren Bernier & José Cuevas Segarra, Aprobación e interpretación de las leyes, Segunda Edición, 1987, Vol. I, p. 339. "Cuando las palabras generales siguen a palabras específicas en una enumeración descriptiva, las palabras generales se interpretan para que incluyan solamente objetos similares en su naturaleza a los enumerados por las palabras específicas que los preceden". *Íd.*, p. 341.

[61] Llorens Becerra v. Mora Monteserín, 2010 T.S.P.R. 72, pp. 28-29. Énfasis suplido.

ante el silencio legislativo sobre la herencia como ingreso. Para ello, recurriremos a otras expresiones legislativas en las que se define el concepto de "ingreso".[62]

---

[62] En <u>Llorens Becerra v. Mora Monteserín</u>, *supra*, p. 24, hicimos la siguiente expresión de cautela:

> A pesar de que la definición de ingreso de la Ley Núm. 5 incluye una redacción casi idéntica a la Ley de Contribuciones sobre Ingresos de 1954, la interpretación del concepto ingreso que hemos discutido tiene un carácter meramente ilustrativo en lo que respecta a la controversia ante nuestra consideración. El alto interés público de asegurar el bienestar de los menores alimentistas y el derecho de éstos a recibir alimentos, como uno que es inherente a su derecho a la vida, podría requerir una interpretación aún más abarcadora del concepto ingreso en el contexto de la imposición de una pensión alimentaria.

> Así, la interpretación que adoptemos debe ser cónsona con el propósito de la Ley Núm. 5 de asegurar el bienestar de los menores alimentistas. A su vez, la interpretación del concepto ingreso debe concordar con el principio de proporcionalidad que rige la fijación de una pensión alimentaria.

No obstante, en <u>San Juan Trading Co. v. Secretario de Hacienda</u>, 80 D.P.R. 807, 816 (1954), al interpretar el alcance del concepto de 'ingreso bruto' dentro del contexto contributivo, reconocimos la importancia de una "amplia y generosa interpretación que dé cumplimiento al propósito legislativo de ejercer a plenitud la facultad de imponer tributos". Es decir, por haber un interés elevado del estado tanto en recaudar contribuciones como en velar por el cumplimiento con las obligaciones alimentarias de los padres para con sus hijos, es razonable explorar las similitudes en las definiciones del término 'ingreso' en ambas áreas.

La sección 1022 del Código de Rentas Internas de 1994 define lo que constituye ingreso para fines contributivos.[63] De forma expresa, el Código de Rentas Internas *excluye* de la definición de ingreso las donaciones, mandas, legados y *herencias*.[64] Sin embargo, el propio Código incluye una serie de excepciones a esa regla general de que las herencias no constituyen ingreso. Estas son: ingreso de los bienes adquiridos por donación o herencia; cuando la donación o herencia consiste de ingreso de bienes; o cuando la donación o herencia son para pagarse a intervalos.[65] Esto es así, pues "siendo ya el heredero o donatario el titular de la propiedad, es el dueño por derecho propio del *ingreso que el bien produce* y le corresponde, por lo tanto, incluirlo en su ingreso bruto".[66] Esto, a su vez, es cónsono con el propio mandato del Código de Rentas Internas que, en su definición de ingreso, incluye "ganancias o beneficios e ingresos *derivados* de cualquier procedencia".[67] Es decir, que si bien el principal de una herencia no se considerará

---

[63] 13 L.P.R.A. § 8422.

[64] 13 L.P.R.A. § 8422(b)(3).

[65] Genovevo Meléndez Carrucini, Ingreso No Tributable: Exclusiones y Doctrina, 1994, p. 211.

[66] *Íd.*, p. 215 (Énfasis suplido).

[67] *Íd.* (Énfasis suplido). Este lenguaje es similar al utilizado por la Ley número 5, según enmendada, 8 L.P.R.A. § 501(16), en su definición de ingreso cuando se refiere a "ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de *cualquier procedencia*". (Énfasis suplido).

ingreso para efectos contributivos, lo que se genere de esa herencia sí lo será.

En cuanto a las razones por las cuales el ordenamiento contributivo no considera una herencia como ingreso, nos dice Meléndez Carrucini que "[t]radicionalmente, las herencias y donaciones se han sometido a la contribución sobre herencias y donaciones solamente. Imponerles además la contribución sobre ingresos, equivaldría a someter el mismo valor, aunque técnicamente no el mismo evento, a doble tributación, onerosidad que el legislador, según parece, procuró eludir con la exención de uno de los eventos, en este caso, el de la contribución sobre ingresos".[68] Es decir, la explicación que nos propone Melendez Carrucini de por qué no se imponen contribuciones sobre ingreso a lo recibido por herencia no corresponde a nuestra realidad actual, pues desde 1983 también se exime de contribuciones al acto de donar o dejar en herencia algún bien.[69] Sin embargo, lo cierto es que, casi 30 años después de eximir a las herencias de contribución por ese evento, la Asamblea Legislativa ha mantenido la exclusión de los bienes adquiridos mediante herencia de la definición de ingreso tributable para efectos de contribución por ingreso.

La definición de "ingreso" que encontramos en la Ley número 5 nos revela un hilo conductor: la estrecha relación

---

[68] *Íd.*, p. 210.

[69] *Íd.*

entre este término y los conceptos de esfuerzo, trabajo y ganancia.[70] Es evidente la exclusión de otros elementos que, si bien constituyen riqueza, no guardan relación con el trabajo ni con la visión del ingreso como producto de una labor realizada o una ganancia obtenida. Esa relación está presente en otros sectores de nuestro ordenamiento que intentan precisar las ideas de 'ingreso' y 'ganancia'. Lo encontramos, a modo de ejemplo, como elemento definitorio de los bienes sometidos al régimen ganancial en aquellos matrimonios sujetos a la sociedad legal de gananciales.[71] Aquí también se utilizan como criterio separador los elementos de esfuerzo, industria y trabajo. En el artículo 1301 del Código Civil se mencionan los bienes obtenidos por industria, sueldo o trabajo y los frutos, rentas o intereses percibidos o devengados provenientes de bienes comunes o peculiares como bienes de naturaleza ganancial. También está presente este criterio diferenciador en el artículo 1299 del Código Civil, aunque en sentido contrario, al caracterizar expresamente los bienes adquiridos por título lucrativo por donación, legado o herencia como de naturaleza privativa. La Ley número 5, al igual que el artículo 1301 del Código Civil, expresamente incluye como "ingreso" que debe ser considerado para

---

[70] *Véase* nota al calce número 60 sobre la interpretación estatutarias y las palabras asociadas.

[71] Artículos 1299 y 1301 del Código Civil, 32 L.P.R.A. § 3631 y § 3641, respectivamente.

computar una pensión alimentaria a la industria y al sueldo, así como a las rentas e intereses devengados.[72]

V.

Si bien nuestra normativa y jurisprudencia son base suficiente para interpretar el alcance del concepto de "ingreso" según definido por la Ley número 5 y determinar si éste incluye bienes adquiridos por herencia, entendemos provechoso, por su valor persuasivo e ilustrador, analizar cómo otras jurisdicciones han atendido controversias similares.

Varias jurisdicciones de los Estados Unidos han atendido directamente la interrogante de si se debe considerar una herencia como ingreso[73] para determinar una pensión alimentaria a favor de un menor de edad. Teniendo en cuenta que muchas de esas interpretaciones corresponden a definiciones estatutarias que no necesariamente son iguales a la nuestra, examinaremos algunas de ellas, con la debida cautela.

---

[72] Otro ejemplo en el campo del régimen económico del matrimonio, que ayuda a ver la distinción entre dos tipos de riquezas al momento de determinar si es ganancial o privativo, es la clasificación que se hace de la compensación que recibe un cónyuge por concepto de daños y perjuicios. A pesar de que se trata de una compensación monetaria, hemos resuelto que, por no constituir ganancia, lo recibido por ese concepto debe ser considerado como un bien privativo. Robles Ostolaza v. U.P.R., 96 D.P.R. 583, 595-596 (1968). Tampoco es considerado como ingreso para efectos de una pensión alimentaria.

[73] "Income".

Los casos resueltos en las jurisdicciones estadounidenses se pueden agrupar en tres tendencias. La tendencia mayoritaria ha resuelto que lo adquirido mediante herencia no constituye ingreso y que se pueden imputar ingresos a partir de lo que los bienes heredados produjeron o pudieron haber producido si se hubiesen invertido. Estos tribunales concluyen, además, que la totalidad de la herencia puede ser un factor subjetivo a considerar para ajustar la pensión. La segunda tendencia entiende que la herencia no constituye ingreso y que sólo se puede tomar en consideración como factor contextual al momento de fijar el monto de una pensión alimentaria. La tendencia minoritaria considera que una herencia sí constituye ingreso para efectos de determinar una pensión.[74]

---

[74] No nos convence la tendencia minoritaria en las jurisdicciones estadounidenses que caracterizan la herencia como ingreso para efectos de cómputo de la pensión alimentaria. En algunos de esos casos, esa conclusión se basa en definiciones estatutarias que, si bien no mencionan herencias expresamente, incluyen las donaciones como un tipo de ingreso. Este es el caso de Virginia (Forsythe v. Forsythe, 41 Va. Cir. 82 (1996)) e Indiana (Gardner v. Yrttima, 743 N.E. 2d 353 (Ind. App. 2001)) cuyos tribunales han resuelto equiparar la herencia a la donación. Sin embargo, nuestro ordenamiento no permite esta analogía. En primer lugar, las donaciones *tampoco* están incluidas expresamente en la definición de ingreso ofrecida en la Ley número 5 o en las Guías de 2006. En segundo lugar, en Puerto Rico, si bien existen gracias testamentarias cuya causa es la mera liberalidad semejante a las donaciones, como en el caso de un legado a un extraño, la herencia en muchos casos obedece a requisitos de ley como la institución de la herencia forzosa en las legítimas de descendientes y ascendientes que tienen poco que ver con el ánimo de liberalidad. Dávila v. Agrait, 116 D.P.R. 549, 575 (1985).

Vemos un ejemplo de la tendencia mayoritaria en Nueva Jersey, donde se ha resuelto que si bien el principal de una herencia no constituye ingreso, los intereses generados por ésta se imputarán como ingreso. Además, se ha determinado que el caudal heredado se puede tomar en consideración para computar la pensión aunque no constituya ingreso propiamente.[75] En cuanto a la imputación de los ingresos devengados de la herencia, no se distingue entre lo que realmente se devengó y lo que se *pudo* haber devengado: "The voluntary choice of the father placing his inheritance in a non-income producing asset should not result in an exclusion of that asset from consideration in the child support equation".[76]

En otros estados no se han incluido los bienes heredados como ingreso, pero no se ha adoptado la figura del ingreso imputado; en vez, se ha resuelto que esos bienes deben considerarse como un factor subjetivo al

---

[75] Connell v. Connell, 712 A.2d 1266, 1269 (N.J. Super. A.D. 1998).

[76] *Íd*. A igual conclusión se llegó en Connecticut (Stula v. Stula, FA 940544358S 1998, Conn. Super. LEXIS 523), Arkansas (Halter v. Halter, 959 S.W. 2d 761, 762 (Ark. App. 1998), en donde se resolvió que se puede emplear tanto una ganancia hipotética como cualquier ganancia que la herencia podía haber generado, y Missouri (Gal v. Gal, 937 S.W. 2d 391 (Mo. App. E.D. 1997) en donde el tribunal determinó que la herencia no era ingreso sino que se podía utilizar para descifrar la situación económica del alimentista. En el estado de Washington, se ha resuelto que el monto principal de una herencia no es ingreso para efectos de una pensión alimentaria, pero que los frutos e intereses producidos por ésta sí lo son. Así se concluyó también en Ohio (Reech v. Reech, No. 70241, 1997 Ohio App. LEXIS 318) y en Alaska (Robinson v. Robinson, 961 P.2d 1000 (Alaska 1998); Crayton v. Crayton, 944 P.2d 487, 490 (Alaska 1997)).

momento de fijar una pensión definitiva. Entre estos estados se encuentra Pennsylvania donde el Tribunal Supremo interpretó que la omisión legislativa de incluir a la herencia en un listado detallado de los bienes que constituyen ingreso indica que ésta no cabe dentro de la definición estatutaria de ingreso. Cabe destacar que la definición estatutaria de ingreso[77] de ese estado es similar a la nuestra.[78] Aún así, el Tribunal Supremo de Pennsylvania determinó que la herencia puede afectar la cantidad otorgada como pensión, pues las guías alimentarias del estado incluyen una referencia a los activos[79] del alimentante como un factor que debe considerarse.[80]

La interpretación de la mayoría de los tribunales estatales de los Estados Unidos está en sintonía con los pronunciamientos del Tribunal Supremo de España al amparo

---

[77] *"Income"*.

[78] § 4302 Domestic Relations Code, 23 Pa. C.S. §§ 101-8215.

[79] *"Assets"*.

[80] En California, al igual que en las jurisdicciones mencionadas anteriormente, el monto principal de una herencia no se considera ingreso para efectos de una pensión alimentaria. County of Kern v. Castle, 89 Cal. Rptr. 2d 874 (Cal. App. S Dist. 1999). Al igual que en Puerto Rico, la definición estatutaria de ingreso no menciona la herencia expresamente. *Íd.*, p. 878. Pero, los tribunales han resuelto que se puede tomar en consideración lo que llama "this newly found wealth" al momento de determinar la cuantía de una pensión, con el objetivo de que el menor alimentista pueda compartir el nivel de vida mejorado de su padre. *Íd.*, p. 883. A semejante conclusión se ha llegado en Nueva York (Cody v. Cody, 735 N.Y.S. 2d 181, 291 A.D. 2d 27 (2001)), y Massachusetts (Croak v. Bergeron, 856 N.E. 2s 900 (Mass. App. Ct. 2006)) y en el Distrito de Columbia (Lasche v. Levin, 977 A.2d 361 (D.C. 2009)).

de los artículos 143 y 146 del Código Civil. En el caso particular de una herencia, en la Sentencia de 11 de octubre de 1951,[81] el Tribunal Supremo avaló una pensión alimentaria basada en una "cantidad equivalente al 80 por 100 del valor líquido de las *rentas* de los bienes relictos".[82] Es decir, no exigió el uso de la totalidad de los bienes relictos al momento de calcular la cuantía de una pensión, sino que se limitó a imputar como ingreso el valor líquido de los beneficios producidos por dichos bienes.

VI.

Al momento de fijar una pensión alimentaria tanto la doctrina como la jurisprudencia han empleado numerosos conceptos cuyo uso intercambiable, a pesar de sus similitudes, se presta a confusión. Por ejemplo, se ha hecho referencia a "recursos",[83] "capacidad económica",[84] "bienes",[85] "fortuna",[86] "ingreso",[87] "estilo de vida",[88]

---

[81] Repertorio de Jurisprudencia 2347, Aranzadi, pp. 1591-92.

[82] (Énfasis suplido).

[83] Artículo 146 del Código Civil, 32 L.P.R.A. § 565; Serrano Geyls, *Op. Cit.*, p. 1465; Padial Albás, *Op. Cit.*, p. 248; Sarah Torres Peralta, *Op. Cit.*, p. 8.01.

[84] Chévere v. Lewis, *supra*, p. 530; Ferrer v. González, *supra*, pp. 179-180; Tribunal Supremo de España, Sentencia de 16 de julio de 2002, Repertorio de Jurisprudencia 6246, Aranzadi, p. 11101; Sarah Torres Peralta, *Op. Cit.*, p. 8.04.

[85] Betancourt v. Larregui, *supra*, p. 607; Tribunal Supremo de España, Sentencia de de 31 de diciembre de 1957, Repertorio de Jurisprudencia 3564, Aranzadi, p. 2376.

"posición   social   de   la   familia",[89]   "beneficios",[90]

"ganancias",[91]   "posibilidad   económica",[92]   "caudal",[93]

"medios"[94] y "capital o patrimonio".[95]

Si bien la obligación general de alimentar proviene del artículo 143 del Código Civil, cuyo mandato es amplio y a la misma vez impreciso, a tenor con el principio de especialidad debemos recurrir principalmente a la Ley número 5 y las Guías de 2006 al atender una controversia sobre alimento de menores. Como hemos visto, el asunto de umbral para fijar la cuantía de una pensión alimentaria de

---

[86] Chévere Mouriño v. Levis Goldstein, *supra*, p. 502; Padial Albás, *Op. Cit.*, p. 250; Beltrán Heredia y Onís, *Op. Cit.*, p. 59.

[87] Chévere v. Lewis, *supra*, p. 530; Ferrer v. González, *supra*, p. 179-180; Tribunal Supremo de España, Sentencia de 14 de abril de 1962, Repertorio de Jurisprudencia 1704, Aranzadi, p. 1137.

[88] López v. Rodríguez, *supra*, p. 33; Chévere Mouriño v. Levis Goldstein, *supra*, p. 502; Ferrer v. González, *supra*, p. 180.

[89] Guadalupe Viera v. Morell, *supra*, p. 14; Beltrán de Heredia y Onís, *Op. Cit.*, p. 59.

[90] Torres Rodríguez v. Carrasquillo Nieves, 2009 T.S.P.R. 187, p. 24.

[91] *Íd.*

[92] Padial Albás, *Op. Cit.*, p. 247.

[93] Beltrán de Heredia y Onís, *Op. Cit.*, p. 59; Tribunal Supremo de España, Sentencia de 28 de junio de 1951, Repertorio de Jurisprudencia 1888, Aranzadi, p. 1292; Sentencia de 5 de octubre de 1993, Vol. IV, Repertorio de Jurisprudencia 7464, Aranzadi, p. 9505.

[94] Sentencia de 5 de octubre de 1993, Vol. IV, Repertorio de Jurisprudencia 7464, Aranzadi, p. 9505.

[95] Ley número 5 de 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. § 518(b).

un hijo o hija menor de edad que no vive con un padre es determinar cuáles son sus *ingresos*. Para ello hay que recurrir a la definición de ingreso de la Ley número 5 y las Guías de 2006.

Esta definición de ingreso no menciona expresa ni implícitamente los bienes adquiridos por herencia. No se trata de una omisión involuntaria. En Puerto Rico, a diario, se traspasan bienes producto de particiones de herencia. No obstante, la legislatura no incluyó estos bienes en la definición de ingreso de la ley. Esto es cónsono con la exclusión de las herencias para efectos contributivos y del régimen económico de un matrimonio sujeto a la sociedad legal de gananciales. Es decir, hay una tendencia palpable en nuestro ordenamiento de separar los bienes producto del trabajo, que constituyen ganancia, de otros tipos de riqueza, al menos en cuanto se refiere a la definición de "ingreso". Más aún, se advierte una tendencia consistente y reiterada de separar la institución de la herencia del concepto de ingreso. La controversia ante nuestra consideración no es la excepción.

Sin duda, los bienes adquiridos mediante herencia constituyen riqueza para quien los recibe. No obstante, no encontramos nada en nuestra normativa que nos permita catalogar dicha riqueza como ingreso. Más aún, cuando se trata de bienes que son recibidos como producto de un evento que no es recurrente. Por tanto, resolvemos que los bienes adquiridos mediante herencia no constituyen ingreso

para efectos del cómputo de una pensión alimentaria al amparo de la Ley número 5 de 1986, según enmendada, y las Guías de 2006. Tampoco lo son bajo el artículo 146 del Código Civil.

No obstante, cónsono con la distinción entre la herencia y los bienes *producidos* por ésta que el Código de Rentas Internas considera ingreso para efectos contributivos, así como los pronunciamientos del Tribunal Supremo de España y la tendencia mayoritaria de la jurisprudencia estadounidense, resolvemos que la figura de imputación de ingreso aplica a los bienes adquiridos mediante herencia, sean éstos de naturaleza mueble o inmueble. Esto es consistente con la propia Ley número 5 que, en su definición de "ingreso", incluye cualesquiera "ganancias, beneficios, rendimientos, fondos, emolumentos o compensaciones *derivados de cualquier procedencia*".[96] En efecto, a través de nuestra discusión del concepto de "ingreso", es notable la referencia al elemento de fruto o ganancia derivado de alguna fuente principal, sin que dicha fuente se considere ingreso por sí misma.[97]

Por tanto, para determinar el ingreso bruto de un alimentante, a los bienes adquiridos mediante herencia se les imputará un ingreso, independientemente de si producen ese ingreso en la realidad. Si los bienes heredados

---

[96] 8 L.P.R.A. § 501(16) (Énfasis suplido).

[97] Martínez v. Rodríguez, *supra*, p. 156; 8 L.P.R.A. § 501(16).

producen ingresos, se trata meramente de aplicar el mandato de ley que identifica cualquier ganancia derivada de cualquier procedencia como ingreso computable a efectos de la pensión. Si no se produce en realidad, se trata de la aplicación de la figura de imputación de ingreso recogida en la propia Ley número 5,[98] y en las Guías de 2006.[99] Le corresponde a los foros de instancia, en ejercicio de su sana discreción y a la luz de la totalidad de las circunstancias del caso particular, realizar este cómputo.

Además de imputarle ingreso a los bienes heredados, resolvemos que la cantidad y naturaleza de estos bienes constituyen un factor legítimo que deben considerar los foros de instancia al evaluar si una pensión alimentaria es justa y si es consistente con la verdadera situación económica del alimentante. Es decir, se puede utilizar como factor subjetivo para ajustar la cantidad de una pensión de tal forma que sea verdaderamente proporcional a la capacidad económica del alimentante. Llegamos a esta conclusión como consecuencia del mandato de ley que le requiere a los tribunales tomar en consideración el capital o patrimonio total del alimentante. En fin, se trata de un ajuste que queda a la sana discreción del tribunal según su apreciación de las circunstancias y de la prueba presentada.[100]

---

[98] 8 L.P.R.A. § 518(b).

[99] Artículo 4(17).

[100] Mundo v. Cervoni, *supra*, p. 427.

VII.

En el caso de autos, estamos ante un padre alimentante que no ha rehuido de su responsabilidad de proveer alimentos para su hijo menor de edad. Este pleito inició, precisamente, con una demanda presentada por el propio peticionario para que se fijara la cuantía de la pensión que pagaría a favor de su hijo. La controversia ante nuestra consideración se limita a cómo fijar una pensión alimentaria que sea justa y proporcionada a las capacidades del padre alimentante y a las necesidades del menor alimentista, según establecido por nuestra Asamblea Legislativa en la Ley número 5, según enmendada.

El señor Fonseca Zayas genera un ingreso mensual neto de $3,000. Producto de la muerte de su padre en el 2006, éste obtuvo mediante herencia bienes que suman $170,000 en propiedades y $48,000 en efectivo. Como hemos visto, estas cantidades, de por sí, aunque constituyen riqueza, no deben ser consideradas como ingreso. Tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones erraron al considerar estos bienes al momento de computar el ingreso mensual neto del peticionario.

No obstante, a estos bienes heredados se les debe imputar un ingreso según lo que hubiesen producido si se hubieran invertido. Corresponde al foro de instancia llevar a cabo este análisis. Será esa cantidad la que se le imputará al peticionario como parte de su ingreso mensual.

Es decir, se le añadirá al ingreso mensual neto de $3,000 una cantidad equivalente a lo que en ese periodo de tiempo hubiesen producido los bienes heredados de haberse invertido. Tras determinar el ingreso mensual neto y calcular la pensión a partir de esa cantidad, el tribunal de instancia podrá ajustar la cantidad final, dentro de su sana discreción, como parte de un análisis sobre el impacto global de los bienes hereditarios en la capacidad económica del alimentante.

Por las razones expuestas anteriormente, se revoca la Sentencia del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para la celebración de procedimientos ulteriores consistentes con esta Opinión.

Se dictará sentencia de conformidad.


Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos E. Fonseca Zayas
      Peticionario

                                        *Certiorari*

          v.                     CC-2008-1034

Brenda Rodríguez Meléndez
       Recurrida

                     *SENTENCIA*

En San Juan, Puerto Rico, a 14 de enero de 2011.

        Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se revoca la Sentencia del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para la celebración de procedimientos ulteriores consistentes con esta Opinión.

        Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


                    Aida Ileana Oquendo Graulau
                  Secretaria del Tribunal Supremo